Mildred LOFTUS and Donald A. Loftus,
her husband, Plaintiffs below,
Appellants,

v.

Richard C. HAYDEN, M.D., Defendant
below, Appellee.

Supreme Court of Delaware.

Submitted June 20, 1978.

Decided Aug. 18, 1978.

C. Waggaman Berl, Jr., Wilmington, for plaintiffs below, appellants.

Warren B. Burt of Prickett, Ward, Burt & Sanders, Wilmington, for defendant below, appellee.

Gerald Z. Berkowitz, Wilmington, M. Mark Mendel and Harris T. Bock, Philadelphia, Pa., amici curiae.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This is an appeal in a medical malpractice case from a pre-trial order of the Superior Court determining that a medical expert was not qualified to testify.

## I

A full statement of the facts appears in the Superior Court opinion, *Loftus v. Hayden,* Del.Super., 379 A.2d 1136 (1977), to which reference is made. For present purposes, we need record only that, in support of their claim for damages (direct and derivative) for injuries allegedly caused by defendant doctor during performance of a laparoscopy at the Wilmington Medical Center, plaintiffs proposed to introduce the expert testimony of an out-of-State physician, Dr. H. Barry Jacobs. Pre-trial, the parties submitted the question of Dr. Jacobs' competency to testify as an expert witness. The issue was decided against plaintiffs, who then docketed this appeal.[1]

In refusing to receive Dr. Jacobs' testimony, the Superior Court stated:

".  .  . [A]ccording to the legislative mandate [of 18 *Del.C.* § 6854], .  . familiarity or knowledge [of a medical expert] must specifically relate to the Wilmington medical community. The testimony of Dr. Jacobs indicates brief contact in the community, examination of some medical records and conversations with a number of local practitioners, and some reading of local publications. This lacks the duration of exposure and actual participation or observation of the ways of the local profession which are necessary to provide the foundation of knowledge to qualify as familiarity with the degree of skill ordinarily employed by physicians in the Wilmington area in providing the type of care involved here which is required by 18 Del.C. § 6854. In my judgment, observation and experience of a day or a week does not establish the familiarity contemplated by the statute.

Accordingly, the testimony of Dr. Jacobs does not meet the test of competen-

cy as defined in 18 Del.C. § 6854 and will not be admitted."

379 *A.2d* at 1139.

Briefly, plaintiffs argue that the Trial Court's interpretation of § 6854 (and the resultant rejection of Dr. Jacobs' testimony) will effectively eliminate every out-of-State medical witness, contrary to the legislative intent.[2]

## II

The Delaware Health Care Malpractice Insurance and Litigation Act, 18 *Del.C.* § 6801, *et seq.,* became effective on April 26, 1976. 60 *Del.Laws* ch. 373. In this appeal, we focus on § 6854, which provides:

"No person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with that degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred, under similar circumstances, by members of the profession practiced by the health care provider; provided, however, that any such expert witness need not be licensed in the State."[3]

The Medical Malpractice Legislation Study Committee of the Delaware State Bar Association, which drafted the Statute, made the following comment about § 6854:

"This section .  .  . constitutes an attempt to limit the effectiveness of the 'wandering experts' who find malpractice present in any medical procedure and who have somewhere in their background sufficient credentials to make them appear to be qualified experts. However, this section still permits the use of qualified experts not residing in the State of Delaware, recognizing the small nature

---

1. The complaint was dismissed under a stipulation that, if the issue were determined adversely to plaintiffs, the action would be dismissed.

2. In addition, plaintiffs and the *amici curiae,* argue that, as interpreted by the Superior Court, § 6854 is unconstitutional. Defendant contends that this issue was not raised below and may not be considered for the first time on appeal. See Rule 8. In view of our construc-

tion of the Statute, we do not reach the constitutional contentions.

3. Under prior Delaware case law, the applicable standard of care was that ordinarily employed in the same or a "similar" community. Cf. *Peters v. Gelb,* Del.Super., 303 A.2d 685 (1973), aff'd 314 A.2d 901 (1973).

of this State and the need to permit such expert testimony."

■ While § 6854 is intended to eliminate the "wandering expert," and so should be construed accordingly, it is not designed to eliminate every out-of-State medical expert, and must be construed with that in mind. While we agree with much of the Superior Court's analysis of the Statute, its comment that "observation and experience of a day or a week does not establish the [requisite] familiarity"[4] is too dogmatic and does not adequately accommodate the competing values in the Statute.

### III

The key word to be construed in § 6854 is, "familiar." Competency to testify requires that a witness be "familiar with" the degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred. What does that mean, and how shall this "familiarity" requirement be applied in medical malpractice cases? That is what this appeal is all about.

The word "familiar," of course, is in common usage. While it appears in "legal language" of one kind or another, the word is certainly not limited to the sayings of lawyers and legislators. And since it is not a "technical word," the general directive of the Legislature applies: when interpreting the word, we "read [it in] . . . context and . . . construed [it] according to the common and approved usage of the English language." 1 *Del.C.* § 303. To find such usage, we turn to the dictionaries.

It appears that the word "familiar" has differing definitions. The American Heritage Dictionary, 474, says, for example, that it means "having fair knowledge of something." On the other hand, *Webster's Int'l. Dict.* (2 ed) 915, seems to require more than just a "fair" knowledge because it refers to an "intimate knowledge of, either through study, close association, or common knowledge." The standard stated by *The Random House Dictionary of the English Language* 513, is also a higher one: "familiar" means "well-acquainted; thoroughly conversant." *Black's Law Dictionary* (4 ed) 727, simply defines "familiar" as the equivalent of the word "know."[5]

■ In our opinion, the "familiar" requirement of § 6854 means having more than a fair knowledge of the skill ordinarily employed in the community in question. We think that a witness offered to give "expert medical testimony" should establish that he "knows" what degree of skill is ordinarily employed here and that he is well acquainted or thoroughly conversant with it.

We say this because of the issue which is central to a lawsuit of this kind: a doctor is charged with medical malpractice, that is, it is alleged that his performance did not medically measure up to the standard of care ordinarily employed in such a case— and what that standard is, is crucial to the case; the jury must be informed about the standard and, of course, it gets that knowledge from the expert witnesses who testify. In a word, it is the medical expert who provides the bench mark by which the jury is asked to judge the medical performance of a defendant doctor. Any expert who establishes the Delaware community standard for a Delaware jury certainly should "know" what it is.

■ While the quantum of knowledge which a medical expert must be shown to possess may be categorically stated, how the doctor acquired that knowledge is not susceptible to the same sort of general rule. It is not enough for a professed medical expert merely to say that he "is familiar

---

4. 379 *A.2d* at 1139.

5. The word "familiar" has been construed in *medical* malpractice litigation in other jurisdictions when a witness' competency to testify has been in issue. Since few, if any, jurisdictions have statutes similar to § 6854, most such controversies involved a construction of judge-made evidentiary law. The cases generally divide into two groups: (1) those finding "familiar with" to require knowledge based upon direct occupational or practical experience; and, (2) those permitting it to be based upon private study, observation, or consultation. 46 *A.L.R.3d* 275.

with" the degree of skill ordinarily employed in this community under the circumstances presented. When objection is made to his qualification, the witness must present facts from which the Court can reasonably conclude that the witness has the foundation essential to the expertise which he claims.

As we read the Superior Court opinion, the Court required that:

"[e]xperience, direct observations by the witness personally in the community and study, all accumulated over a sufficient period of time to warrant acceptance as a general proposition must be the real 'familiarity' of the expert. Matters described to an expert by those practicing in the profession in the community may be no more than confirmatory." [379 *A.2d* at 1139]

To that, the Court added that "observation and experience of a day or a week does not establish the familiarity contemplated by the statute."

■ We conclude that this view of § 6854 places too much emphasis on the time requirement before statutory familiarity may be achieved. As plaintiffs argue, it is too rigid and might well, in practical effect, limit expert testimony to physicians who practice here, a result which would be contrary to an important purpose of the Statute.

■ When a Trial Court must determine whether a medical expert has the requisite credentials under § 6854, all relevant factors must be considered and balanced before a ruling is made. The witness should be permitted to show that he acquired the necessary "familiarity" in multivarious ways; for example, by

1) direct observation in Delaware;

2) study in Delaware (as a medical student on rotation, as an intern or as a resident, see, e. g., *Raitt v. Johns Hopkins Hospital*, 274 Md. 489, 336 A.2d 90 (1975);

3) care of Delaware patients referred by Delaware physicians;

4) teaching of students who have dispersed to Delaware;

5) readings of Delaware medical records, reports, journals, and the like;

6) consultations with Delaware physicians;

7) attendance at meetings with Delaware doctors.

We emphasize that this list is illustrative only, and is by no means intended to be exclusive.

■ Each factor must be considered in light of the relative difficulty or novelty of the medical problem, including the diagnosis and treatment thereof; whether there appears to be a national or regional standard as to diagnosis and treatment; the amount of time the witness has given to the various factors, and the time which the witness apparently requires (based upon his own experience and competency) to know the community standard.

We do not announce a firm rule as to how much of each of these factors is required to establish that one is "familiar with" the degree of skill generally exercised in the locality. Whether a witness is familiar with the degree of skill required is a judgment to be made in each case by the Trial Judge, after careful review and balancing of all relevant factors. We do conclude, nevertheless, that the rule adopted by the Trial Court in the instant case was too rigid to be considered a general rule.

## IV

■ While our construction of § 6854 thus differs from that of the Superior Court, we affirm its order refusing to qualify Dr. Jacobs as an expert witness.

Dr. Jacobs is a Board certified surgeon practicing in the Washington, D. C. and northern Virginia area. He has been practicing medicine since 1973 (the year of the alleged malpractice in this case). The Superior Court opinion fairly summarizes the credentials which he offered to establish his

qualifications under § 6854, see 379 *A.2d* at 1138, and we need not repeat them.

We agree with the Trial Judge that Dr. Jacobs' tangentially acquired knowledge does not establish the familiarity with the Delaware medical practice contemplated by the Statute, that is, knowledge by which to measure the performance of a Delaware surgeon. In short, under our construction of § 6854, it cannot be said that the Superi-or Court abused its discretion in refusing to receive Dr. Jacobs' testimony.[6]

Affirmed.

6. In view of the ruling on the merits, we regard defendant's motion to strike Dr. Jacobs' affidavit as moot.