Richard COLEMAN, Carl Sledz, Marietta Dennis, Steven Coleman and Shane Lynagh, Plaintiffs Below, Appellants,

v.

PRICEWATERHOUSECOOPERS, LLC, Defendant Below, Appellee.

Nos. 386, 2005, 473, 2005.

Supreme Court of Delaware.

Submitted: April 25, 2006.
Decided: June 19, 2006.

Kevin William Gibson, Esquire, Gibson & Perkins, P.C., Wilmington, Delaware, for appellants, Richard Coleman, Carl Sledz, Marietta Dennis, Steven Coleman and Shane Lynagh.

Gregory V. Varallo, Esquire, Richards, Layton & Finger, Wilmington, Delaware, for appellee, PricewaterhouseCoopers, LLC.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices (constituting the Court en Banc).

HOLLAND, Justice.

This is an appeal from the Superior Court's grant of summary judgment to the defendant-appellee, PricewaterhouseCoopers LLP ("PwC"). The plaintiffs-appellants, Richard Coleman, Carl Sledz, Marietta Dennis, Steven Coleman and Shane Lynagh (the "appellants"), filed a complaint alleging that PwC made negligent misrepresentations in its audit report on the annual financial statements of Lason, Inc., for the year ended December 31,

1997. The complaint also alleged that the appellants relied upon those financial statements to their pecuniary detriment.

In this appeal, the appellants do not contend that the granting of summary judgment, on the record before the Superior Court, was erroneous. Instead, they argue that the record on which the Superior Court based its decision was the product of three erroneous discovery rulings. In those three rulings, the Superior Court: first, granted PwC's motion to strike a proposed supplemental report by the appellants' expert witness on auditing and accounting; second, denied the appellants' motion to extend the date by which all discovery was to be concluded; and third, ruled as untimely filed an affidavit of the appellant Coleman, purporting to set forth additional expert testimony on behalf of himself and his co-appellants. The appellants also contend that the Superior Court should have set aside, *sua sponte*, its decision granting summary judgment to PwC. Finally, the appellants submit that the Superior Court should have decided the merits of their motion to reargue the granting of summary judgment, which the Superior Court ruled was untimely.

We have concluded that none of the appellants' allegations of reversible error are meritorious. Accordingly, the judgment of the Superior Court must be affirmed.

### Facts

On November 24, 1998, the appellants sold their company, Digital Imaging & Technologies, Inc. ("DIT") to Lason, Inc. The purchase agreement provided for a cash payment of $6.5 million at the closing, $2,025,000 in Lason stock, and deferred "earnout payments." Pursuant to the earnout provision, if DIT, as a Lason subsidiary that would continue to be managed by the appellants, achieved certain earnings targets, the appellants would receive additional payments according to a prescribed formula.

Lason's stock price began a sharp decline in the fall of 1999. By the middle of 2000, Lason's stock was trading at or near zero on the NASDAQ Stock Market, at which time it was delisted. Lason filed for protection under the bankruptcy laws on December 5, 2001. The appellants claim not to have received the full amount of their earnout payments.

The appellants filed this action against PwC in the Superior Court on February 21, 2003, seeking damages under the Restatement (Second) of Torts, Section 552. They allege that PwC made negligent misrepresentations in its audit report on Lason's annual financial statements for the year ended December 31, 1997. In that audit report, PwC stated that its audit of Lason's financial statements was conducted in accordance with Generally Accepted Auditing Standards ("GAAS") and that, in PwC's opinion, Lason's financial statements, in all material respects, were fairly stated in accordance with Generally Accepted Accounting Principles ("GAAP"). The appellants contend that they suffered pecuniary loss by relying on this audit report to conclude that Lason's financial statements supported a decision to accept Lason stock and future earnout payments as part of the consideration for their DIT shares.

### Discovery Schedule Established

In anticipation of trial, the Superior Court held a scheduling conference on September 29, 2004. During that conference, the parties agreed that the twenty-five depositions taken in a prior action arising from PwC's audits of Lason's annual financial statements—*Carello v. PricewaterhouseCoopers LLP*, No. 01C–10–219 (RRC)—would be treated as though they had taken place in the present "Coleman" litigation. Bennett H. Goldstein, the plain-

tiffs' expert witness on auditing and accounting in this case, had also been the *Carello* plaintiffs' expert witness. Accordingly, Goldstein already had received access to PwC's Lason workpapers and to the *Carello* deposition transcripts. Goldstein also had testified and submitted an expert report in the *Carello* proceedings, in which he had opined regarding Lason's financial statements.

Based upon the parties agreement concerning use of the *Carello* discovery materials, the trial judge proposed the following pretrial discovery schedule at the conference on September 29, 2004: the appellants' expert's report would be due on November 12, 2004; the close of discovery would be set for January 28, 2005; and the trial would commence on May 9, 2005. Counsel for all parties agreed to the proposed schedule without expressing any concerns.

On November 12, 2004, Goldstein submitted his expert report (the "November Report") on behalf of the appellants. This report—and the reports that he previously submitted in *Carello*—contained no reference to any material misstatements in Lason's 1997 financial statements. The appellants' counsel did not serve any written interrogatories or requests for production in this matter until November 23 and 24, 2004. The appellants served their first deposition notice in this matter in mid-January 2005.

### Supplemental Expert Report Filed

On January 13, 2005, two days before the due date for the report of PwC's accounting expert, and more than two months after the appellants' expert had submitted the November Report, the appellants' counsel sent to counsel for PwC via electronic mail a supplemental "report" (the "Supplemental Report"), consisting of a letter from Goldstein to the appellants' counsel. Goldstein maintained that the supplementation was necessary because he

had not reviewed, until after the submission of his November Report, the deposition testimony of James G. Reynolds, given on behalf of Lason on March 11 and 12, 2004, concerning the investigation that had been conducted by a Special Committee of Lason's Board. In his Supplemental Report, Goldstein asserted for the first time that the Lason Board's Special Committee had concluded that Lason's 1997 financial statements had overstated income by approximately $5.58 million. Goldstein based this assertion on Reynolds' March 2004 deposition testimony in the *Carello* matter.

### Expert's Supplemental Report Excluded

On January 18, 2005, PwC filed a motion seeking, *inter alia*, to strike appellants' proposed Supplemental Report. According to PwC, the record reflected that Goldstein had testified during his *Carello* deposition on April 1, 2004 (approximately seven months before submitting the November Report), that he had read Reynolds' March 2004 deposition. PwC also asserted that on October 8, 2004, more than a month prior to the appellants' submission of the November Report, PwC sent to the appellants' counsel via overnight mail additional copies of all of the *Carello* deposition transcripts and deposition exhibits, including those of Reynolds.

After briefing and oral argument on January 28, 2005, the Superior Court granted PwC's motion to strike the Supplemental Report. In a bench ruling, the trial judge stated several reasons for his conclusion that "no good cause had been shown to allow the submission of a supplemental expert's report." Those reasons included: (i) the undisputed fact that the appellants' expert, Goldstein, had received the Reynolds transcript "in advance well in front of the [November 12] deadline;" (ii) Goldstein's testimony under oath in April 2004 "that he had already read the [Reynolds] deposition;" (iii) the disruptive impact that the Supplemental Report would have

had on the discovery schedule and on the production of PwC's auditing and accounting expert's report; (iv) appellants' counsel's knowledge, at the time he agreed to the deadline for expert reports, that the *Carello* depositions would be relevant for appellants' expert to review; and (v) the fact that the Supplemental Report "was just dropped like a mini bomb into the legal landscape of this case without any prior telephone call to [defendant's] counsel to see if that would be a problem, without any motion to extend or revise the trial scheduling order to allow for later discovery...."

### Discretion Exercised Properly

■ The standard of review with respect to pretrial discovery rulings is abuse of discretion.[1] "When an act of judicial discretion is under review the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his [or her] judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[2] This Court has explained the application of that standard as follows:

> Judicial discretion is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of

the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused.[3]

■ In this case, the record reflects that the trial judge did not abuse his discretion in denying the appellants' attempt to supplement the original report of their expert, Bennett H. Goldstein. In granting PwC's motion to strike, the trial judge expressed specific and cogent reasons for excluding the Supplemental Report. The appellants do not contend the factual bases for the trial judge's exercise of his discretion were incorrect. Rather, the appellants argue that the trial judge did not appropriately "balance" the various factors he considered in exercising his discretion.

In support of that assertion, the appellants' cite this Court's holding in *Concord Towers, Inc. v. Long*,[4] to the effect that "the [trial court] must balance its duty to admit all relevant and material evidence with its duty to enforce standards of fairness and the [rules of the court]."[5] The record reflects that the trial judge's ruling was completely in accordance with our holding in *Concord Towers*. The trial judge carefully considered and balanced the various factors relevant to his decision.[6] Accordingly, we hold that the ap-

1. See *ABB Flakt, Inc. v. Nat's Union Fire Ins. Co.*, 731 A.2d 811, 815 (Del.1999).

2. *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968).

3. *Firestone Tire and Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del.1988) (citing *Chavin v. Cope*, 243 A.2d at 695).

4. *Concord Towers, Inc. v. Long*, 348 A.2d 325 (Del.1975).

5. *Id.* at 326 (citing *Hoey v. Hawkins*, 332 A.2d 403 (Del.1975)).

6. Delaware courts have consistently engaged in a balancing of factors including considering the original scheduling order, whether

there is good cause to allow the supplement, the prejudice to the opposing party, and possible trial delay. *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, 859 A.2d 989 (Del.Super.Ct.2004) (denying supplemental report because *no showing of good cause*); *Chase Manhattan Mortgage Corp. v. Advanta Corp.*, 2004 WL 422681 (D.Del.2004) (permitting supplemental report because it was not prejudicial, it was only a few weeks past the deadline, the trial was seven months away and the opposing party had plenty of time to depose the witness); *Union Carbide Chems. v. Shell Oil Co.*, 270 F.Supp.2d 519 (D.Del.2003) (denying the admission of supplemental reports when the case was on remand, the expert discovery period was closed, and it would cause substantial prejudice because ad-

pellants have failed to demonstrate that the trial judge abused his discretion in granting PwC's motion to strike the Supplemental Report.

### Discovery Schedule Properly Enforced

On December 14, 2005, the appellants filed a motion to extend the discovery cut-off, along with an accompanying form of order requesting that discovery be extended to April 9, 2005, less than a month before the scheduled commencement of trial. On January 28, 2005, the trial judge denied that motion, for the following reasons: (i) that the "case [had not] been properly discovered when the discovery period started up anew right after September 28th," based on the fact that appellants waited nearly two months to serve any interrogatories or document requests on PwC; (ii) that the appellants' auditing and accounting expert had been the appellants' expert in the prior *Carello* case, and as such already had reviewed the relevant PwC work papers and written a report opining as the 1997 financial statements and PwC's audit report thereon; (iii) that 25 depositions already taken in *Carello* were fully usable in the instant case by agreement of the parties, substantially decreasing the amount of time needed to conduct additional discovery; (iv) that the appellants' counsel had agreed to the schedule set in this case on September 29, 2005; (v) that the appellants had failed to set forth any facts constituting good cause for undoing the discovery schedule; (vi) that it was the trial court's practice not to routinely permit discovery extensions in the absence of good cause; and (vii) that the requested extension would "undoubt-

edly jeopardize the trial date, because there wouldn't be time to [properly] file and then have the Court consider dispositive motions."

It is well settled that "the trial court has discretion to resolve scheduling issues and to control its own docket." [7] The trial court's resolution of pretrial scheduling issues will only be disturbed on appeal if there has been an abuse of discretion. In this case, the appellants have not demonstrated that the trial court abused its discretion in finding that no good cause had been shown to extend the discovery schedule.[8] As noted by the appellants, " '[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." [9] The record reflects that the trial judge properly exercised his discretion in concluding that the discovery schedule should not be extended, as reflected in the numerous factors stated in his bench ruling on January 28, 2005.

### Coleman Affidavit Excluded

On April 18, 2005, PwC filed a motion for summary judgment, based, *inter alia,* on the ground that the appellants' auditing and accounting expert had failed to identify admissible evidence of any material misstatement in Lason's 1997 financial statements on which they allegedly relied. The appellants opposed PwC's motion and submitted an affidavit from the appellant, Richard Coleman. In that affidavit, Coleman purported, for the first time, to offer expert testimony, alleging that, "[us]ing

---

mitting the evidence would require considerable additional discovery).

7. *Valentine v. Mark,* 873 A.2d 1099 (Del.2005) (Table).

8. Super. Ct. Civ. R. 16(b); *Horne v. Kent Gen. Hosp.,* 1990 WL 127840, at *3 (Del.Super.Ct.) ("A scheduling order can be modified for good cause.").

9. 3 James Wm. Moore, et al., *Moore's Federal Practice* § 16.14[1][b] (3d ed.2004).

[his] skills as a trained auditor and accountant, [he] duplicated Mr. Reynolds' analysis and . . . agree[d] with his conclusion." The Superior Court ruled that this affidavit was untimely as purported expert testimony, and inadmissible as lay opinion testimony.

 The trial judge's rulings regarding the admissibility of evidence are reviewed for abuse of discretion.[10] The appellants allege abuse of discretion in the trial judge's determination that he would not consider an affidavit of Richard Coleman. The trial judge stated that he would not accept the Coleman affidavit "[b]ecause the testimony that Mr. Coleman would provide at trial pertaining to alleged material misstatements in the 1997 financial statements is either expert testimony proffered under Delaware Uniform Rules of Evidence ('D.R.E.') 703 or lay testimony proffered under D.R.E. 701 and Mr. Coleman is not qualified under either rule to testify as such." The record reflects that determination was both legally correct and within the trial court's discretion.

Coleman asserted in his affidavit that, "hav[ing] come to read the deposition of James Reynolds. . . . [that Mr. Reynolds] stated on page 58 of his deposition testimony that, Lason had misstated its 1997 income by $5,583,000." Coleman further asserted that "[u]sing my skills as a trained auditor and accountant, I duplicated Mr. Reynolds' analysis and I agree with his conclusion." The trial judge concluded, "based on Mr. Coleman's own words," that Coleman was proffering expert testimony.

The trial judge then ruled that the appellants had failed to designate Coleman as an expert during pretrial discovery, "thereby depriving PwC of an opportunity to cross examine Mr. Coleman on his expert opinion." The appellants do not dispute that they did not designate Coleman as an expert witness during pretrial discovery, or that rules of civil procedure required them to do so.[11]

The trial judge also ruled that the appellants failed to satisfy D.R.E. 702's requirements that

> a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge concluded that, despite Coleman's claim that he "duplicated" Reynolds' analysis, Reynolds himself testified that he relied on memos written by Lason's controller that he was not able to identify further, and to which Coleman "presumably . . . did not have access." Reynolds also testified that he relied on the books and records of Lason. Coleman testified, however, that he did not have access to Lason's books or records and was unaware of their contents.

Alternatively, the trial judge ruled that Coleman's affidavit did not constitute a proper lay opinion. The trial judge noted that D.R.E. 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." The trial judge further noted

---

**10.** *Wien v. State,* 882 A.2d 183, 189 (Del. 2005); *Bell Sports, Inc. v. Yarusso,* 759 A.2d 582, 590 (Del.2000).

**11.** *See Duphily v. Delaware Elec. Co-op., Inc.,* 662 A.2d 821, 836 (Del.1995) (holding that

"[t]he rendering of . . . expert testimony require[s] that [the expert witness] be designated as such in pre-trial discovery and appropriately qualified at trial").

that, under D.R.E. 701, "[I]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness." The trial judge concluded that the appellants did not satisfy the requirements of Rules 602 and 701 with respect to Coleman's testimony since it was admittedly "not based on either 'personal knowledge of the matter' or 'based on the perception of the witness.'" That conclusion was based on Coleman's own admissions that his opinion was based on "read[ing] the deposition of James Reynolds," and that he had no familiarity with Lason's books and records.

Based on the record before him, the trial judge's rulings regarding the proffered affidavit of Coleman cannot be said to have "exceeded the bounds of reason in view of the circumstances [or] so ignored recognized rules of law or practice so as to produce injustice." [12] Accordingly, we hold that the trial judge properly exercised his discretion in applying the requirements of D.R.E. 602, 701 and 702 to the facts of this case.

### Appellants' Obtain SEC Documents

The appellants' counsel in the Coleman case also represents the plaintiffs in *Lundeen, et al. v. PricewaterhouseCoopers LLP,* No. 04C–03–200 (RRC). That is another action filed in the Superior Court in which those plaintiffs allege that they sold their company to Lason in 1998, in purported reliance on PwC's audit report on Lason's 1997 financial statements, which they, too, allege contained negligent misrepresentations. On May 9, 2005, subsequent to the Superior Court's oral grant of summary judgment to appellants in the Coleman matter, appellants' counsel served in the companion *Lundeen* matter a subpoena on the U.S. Securities and Exchange Commission ("SEC") for all documents produced to the SEC by the Special Committee or its counsel that related to the Special Investigation. No similar subpoena had been served in the instant *Coleman* matter.

Four days later, on May 13, 2005, the SEC agreed to make those documents available for review by appellants' counsel. Among the documents received by appellants' counsel from the SEC were (i) an e-mail, dated August 4, 1998, from Cheryl Dunn, the PwC audit engagement partner for the audits of Lason's 1997 and 1998 financial statements, to William Rauwerdink, Lason's Chief Financial Office ("CFO") (the "Dunn e-mail"); and (ii) a letter from PwC to the SEC, dated March 11, 2002 (the "March 11, 2002 Letter"), that was part of the Lason Form 8–K publicly filed with the SEC on March 14, 2002.

In this appeal, the appellee admits that these documents had not been produced by PwC to appellants' counsel in the Coleman matter, and argue those documents were irrelevant to the Superior Court's granting of summary judgment. The appellee submits that March letter was not produced by PwC because PwC, in response to appellants' document requests in Coleman and the related *Carello* and *Lundeen* matters, consistently objected to the production of documents, like the March 11, 2002 Letter, that were publicly available to the appellants. The appellee also asserts that the March 11, 2002 Letter does not provide any evidence of material misstatements in Lason's 1997 financial statements.

### Reargument Motion Denied

On August 8, 2005, the appellants filed a "Motion for Reargument" of the Superior Court's order granting summary judgment

---

**12.** *Firestone Tire and Rubber Co. v. Adams,* 541 A.2d 567, 570 (Del.1988).

in favor of PwC. The sole basis for this motion was the appellants' contention that the order granting summary judgment should be reversed in light of appellants' alleged subsequent discovery of the Dunn e-mail and the March 11, 2002 Letter. On September 6, 2005, the Superior Court denied the appellants' Motion for Reargument.

██ The trial judge held that it was without jurisdiction to act upon the merits of the appellants' motion for reargument. The trial judge determined that the appellants did not file their "Motion for Reargument" within the five-day jurisdictional time limit of Superior Court Civil Rule 59(e). The five-day rule for filing and serving motions for reargument is jurisdictional. The trial judge did not have discretion to extend the deadline.[13] Therefore, the trial judge properly concluded that he was without jurisdiction to decide the merits of the appellants' motion for reargument.

### No New Trial Sua Sponte

Finally, the appellants contend that the trial judge erred by not *sua sponte* setting aside his grant of summary judgment, as provided for in Superior Court Rule 59(c), when the trial judge was apprised that PwC had wrongfully withheld discovery documents that proved the 1997 Lason financial statement was materially misstated. Rule 59(c) states, in relevant part: "Not later than 10 days after entry of judgment the Court of its own initiative may order a new trial for any reason for which it might have granted a new trial motion of a party." Assuming arguendo that a Superior Court judge has the authority to "set aside" or "reopen" a grant of summary judgment *sua sponte* pursuant to Rule 59(c), the record reflects that the

trial judge did not abuse his discretion in not doing so. A Rule 60 motion for relief from judgment was and remains available for the appellants to consider filing.[14]

### Conclusion

The judgment of the Superior Court is affirmed.

---

**13.** Super. Ct. Civ. R. 6(b); *Brown v. Weiler,* 719 A.2d 489 (Del.1998) (Table).

**14.** Super. Ct. Civ. R. 60.