IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERIC PHILLIPS and WICKS' END, INC., | § § § | No. 671, 2013 |
| Defendants/Counterclaim Plaintiffs Below- Appellants, | § § § § | Court Below: Superior Court of the State of Delaware in and for New Castle County |
| v. | § § | |
| WILKS, LUKOFF & BRACEGIRDLE, LLC, AND THAD BRACEGIRDLE, | § § § | C.A. No. N11C10194 |
| Plaintiff Below and Counterclaim Defendant Below- Appellees. | § § § § | |

Submitted: July 10, 2014
Decided: October 1, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

## *O R D E R*

On this 1st day of October 2014, it appears to the Court that:

(1) Defendants-Below/Counterclaim-Plaintiffs/Appellants Eric Phillips ("Phillips") and Wicks' End Inc. ("Wicks' End") (collectively, the "Appellants") appeal from Superior Court orders excluding the expert testimony of their liability witness and granting summary judgment to Plaintiff-Below/Counterclaim-Defendant/Appellees Wilks, Lukoff & Bracegirdle, LLC ("WLB"), and Thad Bracegirdle ("Bracegirdle") (collectively, the "Appellees"). The Appellants raise

four claims on appeal. First, they contend that the trial court erred by excluding the expert testimony of their malpractice liability witness. Second, they argue that the court erred by granting summary judgment to the Appellees on Appellants' malpractice counterclaim. Third, the Appellants claim that the court erred in awarding the Appellees summary judgment on their breach of contract claim. Finally, the Appellants claim that the court abused its discretion by refusing to allow them to take a fact deposition beyond the discovery cutoff date. We find no merit to the Appellants' appeal and affirm.

(2) In October 2010, the Appellees engaged Phillips for the purpose of representing him in on-going Court of Chancery litigation. Phillips is the owner and operator of Wicks' End, Inc. The Appellees sent Phillips an engagement letter which set forth the costs and fees for their legal services. Specifically, the engagement letter provided that (1) fees for services rendered were based on the actual time spent representing the client, (2) the amount of attorney's fees could not be predicted with reasonable certainty due to the nature of the representation, and (3) payment of the firm's fees and costs was not contingent on the on the ultimate outcome of the case. Bracegirdle, as agent of WLB, was assigned to act as the Appellants' primary legal representative.

(3) In 2011, the Appellees filed a complaint against the Appellants alleging breach of contract, *quantum meruit*, and breach of implied contract. In their

2

answer to the complaint, the Appellants acknowledged that the engagement letter was a contract but denied owing the amount requested by Appellees. The Appellants also filed a counter-claim alleging negligent representation and breach of contract against both WLB and Bracegirdle.

(4) In March 2012, the trial court issued a scheduling order that established deadlines and informed both parties that "failure to meet those deadlines, absent good cause shown, likely will result in the court refusing to allow extensions regardless of consequences."[1] Pursuant to the scheduling order, all discovery was to be completed by June 1, 2013. In February 2013, the trial court modified the scheduling order by extending dates for expert discovery, but specifically stated that "[a]ll other dates set forth . . . shall remain in place."[2]

(5) In May 2013, the trial court denied Phillips' motion to extend the fact discovery deadline. But, the trial court did permit WLB to take Phillips' deposition after the June 1st deadline. In July 2013, the court denied Phillips' motion for reconsideration of its May order. In August 2013, the Appellees filed a motion for summary judgment on their breach of contract claim. After hearing arguments on the motion, the trial court awarded summary judgment to the Appellees on that claim.

---

[1] Appellants' Op. Br. App. at A4.
[2] Appellants' Op. Br. App. at A6.

(6) The Appellees also filed a motion *in limine* to exclude the expert testimony of New Jersey attorney William Michelson ("Michelson"). In conjunction with the motion to exclude Michelson, the Appellees filed a motion for summary judgment on the Appellants' malpractice counterclaim citing the Appellants' failure to obtain a qualified standard of care expert. The court granted the Appellees' motion to exclude Michelson's testimony. Thereafter, the trial court awarded summary judgment to the Appellees on the malpractice claim, citing the Appellants' failure to obtain a proper Delaware standard of care expert. This appeal followed.

(7) We review a trial court's decision to admit or exclude expert testimony as a finding of fact for abuse of discretion.[3] "This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[4]

(8) In *Brett v. Berkowitz*, we held that an expert witness in a legal malpractice action must "be familiar with the applicable standard of care in the

---

[3] *Baldwin v. Benge*, 606 A.2d 64, 67 (Del. 1992); *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

[4] *Brown v. United Water Delaware, Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269–70 (Del. 2008)).

4

locality where the alleged malpractice occurred."[5] "Although competency requirements are not designed to preclude all testimony from out-of-state experts, expert witnesses must be 'well acquainted or thoroughly conversant' with the degree of skill ordinarily employed in the local community."[6] Further, "[i]n cases where an expert is familiar with a different locality where the standard of care is identical to that observed in the relevant Delaware locality, another expert may provide bridging testimony to reconcile the two standards."[7] In the absence of any showing of such familiarity, and without bridging testimony to harmonize the standard of care, the expert testimony must be excluded.[8] The Appellants first argue that the trial court erred by excluding the expert testimony of Michelson. They contend that Michelson sufficiently familiarized himself with Delaware case law to meet the standard set forth in *Brett*. They also argue that a bridging expert is unnecessary here because the Appellees have not shown that the standard of care in Delaware and New Jersey differs.

(9) The Appellants' first claim lacks merit. The *Brett* standard requires more than a mere reading of Delaware case law to qualify one as an expert witness. The fact that Michelson familiarized himself with the language of *Brett* does not permit

---

[5] *Brett v. Berkowitz*, 706 A.2d 509, 517 (Del. 1998). This rule applies equally to medical and legal malpractice actions. *Id.* at 518.
[6] *Id.* at 517 (quoting *Loftus v. Hayden,* Del. Supr., 391 A.2d 749, 752 (1978)).
[7] *Id.*
[8] *Id.* at 518.

him to opine on the degree of skill Delaware lawyers must use to successfully discharge their duty of care. Michelson is neither "well acquainted nor thoroughly conversant" with the degree of skill ordinarily employed by Delaware attorneys.[9] Further, whether the standard of care in Delaware and New Jersey is the same is not an assessment that can be made by the Appellants or Michelson. Pursuant to *Brett*, this task belongs to an outside bridging expert who is sufficiently familiar with Delaware law to so opine.[10] The purpose of a bridging expert is to confirm that the standard of care in both states at issue is identical. If Michelson qualified as an expert on the standard of care in Delaware and New Jersey, a bridging expert would not be necessary. But as previously discussed, Michelson is not qualified as an expert on the Delaware standard of care, and thus a bridging expert is required. None was proffered. Thus, the trial court did not err in excluding Michelson's testimony.

(10) The Appellants next claim that, having excluded Michelson from testifying, the trial court erred by granting summary judgment on the legal malpractice action. They argue that the trial court erred by granting summary judgment without ruling on several other motions relating to their malpractice claim. The other motions cited by the Appellants were defensive motions for

---

[9] *Brett*, 706 A.2d at 517.
[10] *Id.*

6

summary judgment made the by the Appellees.[11]  The Appellants argue that these motions also lacked merit and that "it would be unfair if the Trial Judge granted any of [them]."[12]  But the Appellants admit that if summary judgment was properly granted for failure to retain a qualified standard of care expert, these motions are moot.  We have explained that:

> "In order to recover for an attorney's malpractice, the client must prove the employment of the attorney and the attorney's neglect of a reasonable duty, as well as the fact that such negligence resulted in and was the proximate cause of loss to the client."  Thus, in order to sustain a claim of professional negligence against a Delaware attorney, *plaintiff must establish the applicable standard of care through the presentation of expert testimony*, a breach of that standard of care, and a causal link between the breach and the injury.  It is well settled law that claims of legal malpractice must be supported by expert testimony.[13]

(11) The Appellants' claim is misplaced.  The Appellants' appeal stems from the trial court's grant of summary judgment, not those motions which were not addressed by the trial court.  Because each of the other motions relates to the malpractice claim, the Appellants' failure to make out a *prima facie* case of

---

[11] Specifically, the Appellants argue the following motions should have been decided and denied by the trial court: (1) Appellees' motion for summary judgment on Appellants' claim of malpractice for failure to amend the complaint to make a claim for a $160,000 note; (2) Appellees' motion for summary judgment on the malpractice claim relating to the alleged deviation from the standard of care relating to the March 27, Factual Stipulation; (3) Appellees' motion for summary judgment relating to but-for causation; and (4) Appellees' motion for summary judgment relating to the "Two Trigger" issue.

[12] Appellants' Op. Br. at 25.

[13] *Middlebrook v. Ayres*, 2004 WL 1284207, at *5 (Del. June 9, 2004) (quoting *Weaver v. Lukoff*, 511 A.2d 1044, 1986 WL 17121, at *1 (Del. July 1, 1986) (emphasis added)).

7

negligence by providing expert testimony of the applicable standard of care renders the undecided motions moot. Accordingly, the Appellants' second claim is without merit.

(12) In their third claim, the Appellants contend that the trial court erred by granting summary judgment on the Appellees' breach of contract claim simply because a retainer agreement existed. A "contract may exist as either an express contract or an implied-in-fact contract because they are legal equivalents-the first being arrived at by language and the second by actions that demonstrate a meeting of the minds."[14] "The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract."[15] The Appellants argue that the Appellees forfeited their right to compel performance of the agreement due to their negligent representation. They also contend that the Appellees promised to cap fees, creating a question of fact for trial. Finally, they argue that because Wicks' End did not sign the retainer agreement, the claim against it should have proceeded on a *quantum meruit* basis.

---

[14] *Klehr, Harrison, Harvey, Bransburg & Ellers, LP v. Mosaica Educ., Inc.*, 2009 WL 5177144, at *2 (Del. Super. 2009) (citing *Lawrence v. Dibiase*, 2001 WL 1456656, at *5 (Del. Super. 2001)).

[15] *Galantino v. Baffone*, 46 A.3d 1076, 1081 (Del. 2012); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."); *Restatement of Contracts* (Second), § 213, Comment (a) ("[The parol evidence rule] renders inoperative prior written agreements as well as prior oral agreements.").

(13) Appellants' third claim fails for several reasons. As to the Appellants' first argument, in order to be awarded a setoff, the Appellants would first have to show that the Appellees provided negligent legal representation that resulted in financial loss. As previously discussed, the Appellants failed to make a *prima facie* case of malpractice on the part of the Appellees. Thus, they are not entitled to any setoff and are liable for the full amount of legal fees as provided for in the engagement letter.

(14) Second, as to the alleged promise to cap fees, the Appellants acknowledge the engagement letter as a binding contract. The terms of the contract unambiguously state that legal fees are based upon the actual time expended in representing the client, that the Appellees made no commitment in regard to fees and costs, and that the amount of fees and costs could not be predicted with reasonable certainty. Because these terms are unambiguous and the Appellants failed to raise any argument that the contract is not integrated in their Opening Brief, contradictory oral evidence is barred by the parol evidence rule. Thus, the Appellants' second argument lacks merit.

(15) The Appellants' third argument is that the court below should have proceeded on a *quantum meruit* theory in regard to Wicks' End because it was not party to the engagement letter. This argument is also unpersuasive because an implied-in fact contract existed between the parties. The engagement letter was

9

signed by Phillips, who owns and operates Wicks' End. Wicks' End was a third party defendant in the Court of Chancery litigation at issue and was clearly represented by Bracegirdle. This point is highlighted by the fact that Bracegirdle was expressly recognized by the Court of Chancery as Wicks' End's attorney. Wicks' End silently accepted Bracegirdle's services without raising any objection to the professional relationship. Accordingly, an implied-in-fact contract existed and was breached by the Appellants' refusal to pay fees and costs. For the foregoing reasons, the Appellants' third claim fails.

(16) In their fourth and final claim, Appellants argue that the trial court abused its discretion when it denied them the right to depose their former attorneys after the fact discovery cutoff date. We review pretrial discovery rulings for abuse of discretion.[16] "'When an act of judicial discretion is under review the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his [or her] judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness.'"[17] "A trial judge has broad discretion to control scheduling and the court's docket."[18]

(17) The Appellants' final claim is without merit. The record viewed in its entirety shows that the trial court's refusal to extend discovery was neither

---

[16] *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1106 (Del. 2006).

[17] *Id.* (quoting *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968)).

[18] *Goode v. Bayhealth Medical Center, Inc.*, 931 A.2d 437, 2007 WL 2050761, at *3 (Del. July 18, 2007) (citing *Valentine v. Mark*, 873 A.2d 1099 (Del. 2005)).

arbitrary nor capricious. The trial court accommodated Phillips' requests for deadline extensions on several occasions. Specifically, the trial court extended the deadline for Phillips' expert report by 329 days, and also granted Phillips extensions, after his counsel withdrew, to engage new counsel. The modified scheduling order clearly stated that the fact discovery deadline was June 1st and that it would not be modified except for good cause. The Appellants have failed to put forth any valid reason as to why an extension was warranted. Thus, the Appellants' final claim is without merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

11