# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KAREN I. MILLER, Individually and as Representative of the Estate of LOIS V. CARD, KRISTI WRIGHT, and ERKKI M. AKKOLA,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTIANA CARE HEALTH, SERVICES, INC., IPC HEALTHCARE, INC., and MEGHANA DHAMDHERE, M.D., Ph.D.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. NO.: N16C-09-115 AML<br><br>JURY TRIAL OF 12 DEMANDED |

Submitted: June 21, 2018
Decided: September 28, 2018

**Upon CCHS's Motion for Partial Summary Judgment: DENIED**

1.      This medical negligence action arises from treatment a patient received in the emergency room after experiencing severe chest pain. Among other claims not at issue in this motion, Plaintiffs contend the two emergency room doctors who treated the patient negligently failed to diagnose her aortic dissection. The hospital has moved for summary judgment as to the negligence claims against the emergency room doctors, arguing Plaintiffs' experts are not qualified to testify regarding the standard of care applicable to emergency room physicians. The issue presented in the pending motion is whether Plaintiffs may rely on the expert opinions of two doctors who are not experienced in emergency medicine. Those

doctors have testified that the standard of care for diagnosing aortic dissection is the same regardless of the treating doctor's specialty or the setting in which care is administered. Because I find Plaintiffs have shown that their experts are qualified to testify regarding the standard of care, I deny the motion for partial summary judgment.

**FACTUAL & PROCEDURAL BACKGROUND**

2. The following facts are drawn from the complaint. Lois Card was admitted to the Emergency Room at Christiana Care Health Services' Wilmington Hospital on the morning of March 1, 2015, after experiencing severe chest pain and difficulty breathing. The receiving nurse noted Card continued to experience chest pain, headache, and non-radiating bilateral pain in her arms. After evaluation by an emergency physician, an EKG showed Card had an irregular heart rate. A chest x-ray showed mild vascular congestion, and a cardiac enzyme test showed a negative troponin reading. At noon that day, Card's care was transferred to IPC Healthcare and Dr. Dhamdhere, where Card was diagnosed with chest discomfort and atrial fibrillation. The same day, at approximately 5:00 p.m., Card came under the care of Dr. Kathryn Groner, who determined Card needed to be transferred to the hospital's heart unit.[1] Before Card could be transferred, however, she became

---

[1] Neither the complaint nor the parties' briefs discuss when Card came under the care of Nitowski or what manner of treatment he provided. Dr. Nitowski is, however, noted as treating

2

unresponsive. Card's condition deteriorated and she was pronounced dead at approximately 7:30 p.m. Card is survived by her children, Karen Miller, Kristi Wright, and Erkki Akkola, who are Plaintiffs in this action.

3. On September 14, 2016, Plaintiffs brought a medical negligence claim against CCHS, Dr. Dhamdhere, and IPC Healthcare. As part of their case, Plaintiffs alleged that Card's treating emergency physicians, Drs. Leonard Nitowski and Kathryn Groner, failed to identify and diagnose Card's aortic dissection.[2] In support of these allegations, Plaintiffs offer the testimony of Dr. Thomas Berger, a former thoracic surgeon, and Dr. Donald Marks, a hospitalist. After discovery, CCHS filed a motion for partial summary judgment as to all direct negligence claims against CCHS's emergency medicine staff.

**THE PARTIES' CONTENTIONS**

4. In its motion for summary judgment, CCHS argues Plaintiffs' witnesses are not qualified to testify to the standard of care for emergency medicine. CCHS contends 18 *Del. C.* § 6854 requires Plaintiffs' experts to be familiar with the degree of skill ordinarily employed in the field of medicine on which they will testify. Because Plaintiffs' experts are not familiar with emergency medicine, CCHS argues they cannot testify as to whether Card's

---

Card at some time on March 1, 2015, during her stay at Wilmington Hospital. Pls.' Answer Br. at 1.
[2] Pls.' Answering Br. at 1.

3

emergency physicians breached the standard of care, and Plaintiffs therefore cannot maintain any direct medical negligence claims against CCHS's emergency staff.

5.    In response, Plaintiffs first argue CCHS's motion should be raised as a motion *in limine*, not a dispositive motion.  Second, Plaintiffs argue the alleged negligence involves the failure to diagnose an aortic dissection, which Plaintiffs contend is a field that intersects multiple medical specialties.  Because their experts are familiar with diagnosing and treating aortic dissections, Plaintiffs argue their experts are qualified to testify to the standard of care applicable to making that diagnosis, whether the setting of care is an emergency room, urgent care, or primary care office.

## ANALYSIS

6.    Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]  When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[4]  The Court will

---

[3] Super. Ct. Civ. R. 56(c).
[4] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

4

accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[5]

7.    Plaintiffs first argue Drs. Berger's and Marks' qualifications should be analyzed under the *Daubert* standard on a motion *in limine* as opposed to a dispositive motion. Courts in Delaware, however, repeatedly have resolved dispositive motions on the basis of expert medical witnesses' qualifications under Section 6854.[6] CCHS's motion for summary judgment is a proper vehicle to examine the experts' qualifications and determine whether Plaintiffs may rely on those experts' opinions to establish their claims against CCHS.

8.    CCHS argues summary judgment is appropriate because Plaintiffs cannot meet their burden of proof at trial. Apart from several limited exceptions not applicable here, Delaware law requires a plaintiff in a medical negligence action to support her claim with expert medical testimony as to both the alleged deviation from the standard of care and the causal connection between the wrongful conduct and the alleged injury.[7] If the plaintiff fails to support her allegations with expert medical testimony, the defendant is entitled to judgment as

---

[5] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

[6] *See, e.g.*, *Hubscher v. Pantzer Mgmt. Co.*, 1995 WL 563272, at *1 (D. Del. Aug. 25, 1995); *Burkhart v. Davis*, 602 A.2d 56, 59 (Del. 1991); *Loftus v. Hayden*, 391 A.2d 749, 753 (Del. 1978).

[7] 18 *Del. C.* § 6853(e).

5

a matter of law.[8] Title 18, Section 6854 of the Delaware Code requires a medical expert opining as to standard of care to be "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify."[9] If an objection is made to a witness's qualifications, the burden is on the party proffering that witness to establish that the witness meets the standard under Section 6854.[10]

9.      Although the general rule under Section 6854 is that a physician in one field of medicine is not competent to testify about the standard of care in a different field of medicine, there are at least two exceptions to that rule, namely where: (1) "the methods of treating a particular ailment are generally the same in either school," and (2) "a physician, although trained in one school[,] steps out of the practice of his own school and attempts to treat a patient in a manner practiced by another school."[11] Plaintiffs argue the first exception applies here. Although Plaintiffs acknowledge that Drs. Berger and Marks are not emergency room physicians, Plaintiffs contend the doctors are competent to opine in this case because the standard of care for identifying and diagnosing aortic dissection is the same for any doctor treating a patient with those symptoms, regardless of the doctor's specialty. Plaintiffs argue the area of expertise in this case involves aortic

---

[8] *Hubscher*, 1995 WL 563272, at *4; *Burkhart*, 602 A.2d at 5.
[9] 18 *Del. C.* § 6854 (emphasis added).
[10] *Loftus*, 391 A.2d at 753.
[11] *Hurley v. Medical Center of Delaware*, 1988 WL 130399, at *2 (Del. Super. Nov. 28, 1988).

6

dissection, "a matter that crosses over multiple medical specialties."[12] In other words, Plaintiffs contend it is not relevant to the standard of care in this case that the alleged negligence occurred in an emergency room setting.

10. CCHS, on the other hand, notes that emergency medicine is a specialty, and Drs. Berger and Marks admitted they are not experienced in that specialty. CCHS argues Dr. Berger is not presently a practicing physician, has never worked as a hospitalist, and has no experience identifying or diagnosing aortic dissection in an emergency room setting.[13] Similarly, CCHS argues Dr. Marks is not an emergency physician and only treats patients after an emergency physician recommends admission.[14] Dr. Marks acknowledged in his deposition that "I am not an expert in emergency medicine."[15]

11. In support of its contention that Section 6854 precludes Plaintiffs' experts from testifying in this case, CCHS relies on this Court's decision in *Werner v. Nanticoke Memorial Hospital, Inc.*[16] In *Werner*, this Court recognized that emergency medicine involves a standard of care distinct from other fields of medicine, and an expert witness who seeks to testify as to that standard must demonstrate familiarity with emergency medicine.[17] The plaintiff in *Werner*

---

[12] Pls.' Answer Br. at 5.
[13] Def.'s Op. Br. Ex. B at 26, 29.
[14] Def.'s Op. Br. Ex. C at 24-25.
[15] Def.'s Op. Br. Ex. C. at 26.
[16] 2014 WL 5713137 (Del. Super. Nov. 3, 2014)
[17] *Id.* at *2.

7

claimed an emergency room physician negligently failed to treat him for an ischemic stroke.[18] In support of his claim, the plaintiff proposed to call a neurologist to testify to the standard of care.[19] The plaintiff argued the neurologist was qualified to testify to the standard of care because the defendant doctor acted as a neurologist when he treated the plaintiff.[20] The Court rejected that argument, holding the expert must be familiar with the standard of care for emergency medicine specifically.[21] The Court held that "an emergency room physician has training and skills which, although [they] may overlap in some instances, are for the most part distinct from those of board certified neurologists."[22] The *Werner* Court also held that even physicians who have close and intense interactions with emergency rooms or provide occasional emergency services still do not qualify as experts in emergency medicine.[23]

12. CCHS's reliance on *Werner* and similar cases is misplaced. This case more closely aligns with the Delaware Supreme Court's decision in *Baoust v. Kraut*.[24] In *Baoust*, the Court held the Superior Court erred in refusing to admit the expert opinion of an infectious disease specialist who sought to testify regarding the standard of care applicable to a neurosurgeon treating an infection after brain

---

[18] *Id.* at *1.
[19] *Id.*
[20] *Id.* at *2.
[21] *Id.*
[22] *Id.*
[23] *Hubscher v. Pantzer Mgmt. Co.*, 1995 WL 563272, at *6 (Del. Super. Aug. 25, 1995).
[24] 377 A.2d 4 (Del. 1977).

surgery.[25] The Court acknowledged that an infectious disease specialist is not competent to testify regarding neurosurgical technique, just as a neurosurgeon cannot testify on proper treatment of infections unrelated to neurological disorders. The Court found, however, that each competently could testify on the issue in *Baoust*, which was whether a particular neurosurgical procedure was necessary to treat an infection that arose after brain surgery.[26]

13. Here, Drs. Berger and Marks both testified that the standard of care applicable to identifying and diagnosing aortic dissection is the same across emergency, primary care, and cardiac fields of medicine.[27] In *Werner*, the Court found that the plaintiff was trying to hold an emergency room doctor to the standard of care applicable to a neurologist. Here, in contrast, Plaintiffs' experts have testified that the symptoms common to this condition present the same in every setting, doctors across several fields of medicine are trained to recognize and respond to those symptoms in the same way, and the standard of care for responding to those symptoms does not change based on the treating doctor's specialty or the setting of care.[28] As in *Baoust*, and unlike the facts in *Werner*, Plaintiffs have offered evidence that aortic dissection is a medical problem of concern to different specialties and shares a common standard of care across those

---

[25] *Id.* at 7-8.
[26] *Id.* at 7.
[27] Pls.' Answering Br. Ex. A at 130; Pls.' Answering Br. Ex. B at 41-43, 59, 75.
[28] Pls.' Answering Br. Ex. A at 130-31; Pls.' Answering Br. Ex. B at 41-43, 59-61.

specialties.[29] Although CCHS may offer its own experts to testify that a different standard of care applies in this case, CCHS is not entitled to summary judgment because Plaintiffs have produced experts qualified to testify under Section 6854.

**CONCLUSION**

For the reasons set forth above, CCHS's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge

Original to Prothonotary

cc:  David G. Culley, Esquire
     Richard Galperin, Esquire
     Joshua Meyeroff, Esquire

---

[29] *Balan v. Horner*, 706 A.2d 518, 520-21 (Del. 1998) (holding a gynecologist was competent to testify as to the standard of care for general surgeons performing laparoscopies because the record supported the conclusion that there was a common standard of care with respect to basic laparoscopic procedures.).