IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TRICIA MOSES, | § | |
| | § | No. 357, 2014 |
| Plaintiff-below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| AARON DRAKE, | § | Kent County |
| | § | |
| Defendant-below, | § | C.A. No. K13C-04-010 WLW |
| Appellee. | § | |

Submitted: January 14, 2015
Decided: January 27, 2015

Before **STRINE**, Chief Justice, **RIDGELY** and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

William D. Fletcher, Jr., Esquire (*argued*), Schmittinger & Rodriguez, P.A., Dover, Delaware, for Appellant.

Arthur D. Kuhl, Esquire (*argued*), Reger Rizzo & Darnall LLP, Wilmington, Delaware, for Appellee.

**VALIHURA**, Justice:

Plaintiff-below/Appellant Tricia Moses ("Moses") raises two arguments on appeal. First, she argues that the January 15, 2014, medical opinion of her treating physician, Dr. Stephen Ogden ("Dr. Ogden"), was sufficient to deny Defendant-below/Appellee Aaron Drake's ("Drake") motion for summary judgment on the claim that the medical opinion was legally deficient. Second, she argues, in the alternative, that the denial of her motion to reargue was improper given Dr. Ogden's "clarifications" of his opinion on April 25, and May 14, 2014. We disagree and affirm the decisions below.

## I.        FACTUAL AND PROCEDURAL HISTORY

On April 6, 2011, Moses and Drake were involved in a rear-end motor vehicle collision where Drake's vehicle struck Moses' vehicle. Drake pled guilty to a citation for following a motor vehicle too closely. At the time of the incident, Moses was 26 weeks pregnant. Due to her past medical history, Moses was in a program for high-risk pregnancies. After the motor vehicle collision between Moses and Drake, Moses delivered her child prematurely at 31 weeks. While Moses' complaint contained allegations of trauma-induced premature birth and trauma-induced mental and physical difficulties relating to the child, Moses did not oppose dismissal of all claims pertaining to the child in the proceedings below. Accordingly, Moses does not contend on appeal that the complications of her

1

pregnancy or the premature birth of her child were proximately caused by the motor vehicle collision.

Due to the severe nature of the claimed injuries in Moses' complaint, it appeared initially that Drake may require multiple experts to address the various claims. Drake's counsel requested at least six months to prepare expert reports after Moses' expert reports were due.

On July 19, 2013, the trial court issued a full scheduling order that included a deadline for Moses to identify her experts and produce her experts' curricula vitae by November 29, 2013, and her experts' reports by December 31, 2013. On December 11, 2013, after Moses failed to meet the November 29, 2013, deadline, Drake filed a motion to dismiss. In response, Moses' counsel contacted Drake's counsel, and the parties agreed to a stipulation modifying the scheduling order and extending the expert disclosure deadlines. The stipulation was then approved by the Superior Court on December 18, 2013. Moses' new deadline to identify experts became December 31, 2013, and her experts' reports were due January 31, 2014.

On January 31, 2014, Moses produced a one-paragraph opinion from Dr. Ogden dated January 15, 2014. The opinion stated that:

> My former patient Tricia Moses was in a motor vehicle accident on 4/6/2011. She subsequently came to my office with complaints of back pain. She was treated with anti-inflammatory medication and Physical Therapy. It is *feasible* that the complaints she presented with

2

are causally related to her motor vehicle accident and to the best of [*sic*] knowledge were not related to a previous injury or illness. Her injuries were treated with conservative measures and at the time I treated her no surgery was needed and no permanent impairment was sustained.[1]

On April 16, 2014, Drake filed a motion to dismiss on the basis that Dr. Ogden's opinion was legally insufficient because he used the word "feasible." Drake argued that "feasible" does not meet the standard for reasonable medical probability because the dictionary definition is synonymous with "possible." On May 1, 2014, Moses filed a response to Drake's motion to dismiss that included a clarifying statement from Dr. Ogden dated April 25, 2014, which stated:

> To clarify my letter of January 15, 2014, since to the best of my knowledge, Trisha Moses' complaints of back pain were not related to a previous illness or injury, it is *more likely than not* that these complaints of back pain were causally related to her motor vehicle accident of April 6, 2011.[2]

The Superior Court, relying on our recent decision in *O'Riley v. Rogers*,[3] considered both of Dr. Ogden's statements and held that they were insufficient as a matter of law because the court concluded that a doctor's opinion must use the phrase "reasonable medical probability" or "reasonable medical certainty" to survive a motion for summary judgment.[4] The trial court observed that the

---

[1] App. to Appellant's Opening Br. at A7 (emphasis added).

[2] App. to Appellant's Opening Br. at A71 (emphasis added).

[3] 69 A.3d 1007 (Del. 2013).

[4] *Moses v. Drake*, 2014 WL 2119991, at *4 (Del. Super. May 13, 2014) [hereinafter *Moses I*].

deadline for expert reports had passed and held that Moses was "precluded from offering any other expert testimony."[5] Accordingly, the trial court granted Drake's motion for summary judgment on May 13, 2014.[6]

On May 20, 2014, Moses filed a motion seeking reargument. Moses argued that neither *O'Riley* nor any other source of Delaware law defines "reasonable medical probability." Moses argued that Dr. Ogden's April 25, 2014, supplemental report established a sufficient basis for his opinion beyond a mere possibility. In addition, Moses submitted another supplemental report dated May 14, 2014 (the day after the trial court granted Drake's motion for summary judgment). The May 14 report states:

> To further clarify my letter of January 15, 2014, since to the best of my knowledge, Trisha Moses' complaints of back pain were not related to a previous illness or injury, based upon reasonable, medical probability, these complaints of back pain were causally related to her motor vehicle accident of April 6, 2011.[7]

The trial court denied Moses' motion to reargue on June 10, 2014.[8] The court noted that Moses had two weeks before the expert disclosure deadline to

---

[5] *Id.*

[6] *Id.* As clarified in its subsequent opinion denying Moses' motion for reargument, the trial court also based its May 13 ruling on the untimeliness of the April 25, 2013, report, stating that "[b]ecause Dr. Ogden's expert report was insufficient as a matter of law, and because the cutoff for Plaintiffs' expert report had already passed, the Court granted summary judgment on Trisha's claim to recover for her back pain." *Moses v. Drake*, 2014 WL 4249784, at *2 (Del. Super. Jun. 10, 2014) [hereinafter *Moses II*].

[7] App. to Appellant's Opening Br. at A97.

[8] *Moses II*, 2014 WL 4249784.

4

attempt to cure Dr. Ogden's defective report after it has been created on January

15. The circumstances of the filings of the supplemental reports led the court to

conclude that the clarifying statements were "nothing more than reactionary filings

to the Defendant's motion and the Court's ruling."[9] The court stated that:

> [t]o consider these filings now would render the scheduling order --
> and the well-established practice of requiring a plaintiff to submit
> expert reports by a specific date early on the discovery process --
> meaningless. Further, to hold otherwise would prejudice a
> defendant's ability to defend their case, as they would be left guessing
> as to what the basis of an expert's opinion is up until the date of the
> expert's deposition, or even up until trial.[10]

For the reasons set forth below, we affirm the decisions of the trial court in

granting summary judgment and denying reargument.

## II. DISCUSSION

### A. The Trial Court Did Not Err in Granting Summary Judgment or Denying Reargument

### 1. Standard of Review

We generally review a trial court's grant of summary judgment *de novo*.[11]

To the extent that the grant of summary judgment was based on a plaintiff's expert

---

[9] *Id.* at *4.

[10] *Id.*

[11] *Gunzl v. Chadwick*, 2 A.3d 74 (Del. 2010).

5

disclosure and report deadline not being extended, we review for an abuse of discretion.[12]

## 2. *Analysis*

Trial courts are not required to allow a plaintiff to supplement a previously submitted expert report after the expert report cutoff has expired if there is no good cause to permit the untimely filing.[13]  Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party.[14]

Notably, Moses did not seek an extension to file expert disclosures and reports before the January 31, 2014, deadline had passed.  Thus, the trial court did not have before it an application to consider extending the deadline to permit

---

[12] *Christian v. Counseling Resource Assoc.*, 60 A.3d 1083, 1086-87 (Del. 2013) ("This Court reviews a trial court's decision refusing to modify a trial scheduling order for abuse of discretion.").

[13] *See Lundeen v. Pricewaterhouse Coopers*, 2007 WL 646205, at *2 (Del. Mar. 5, 2007); *Coleman v. Pricewaterhouse Coopers, LLC*, 902 A.2d 1102, 1106-1107 (Del. 2006) (affirming the trial court's denial of expert's untimely supplemental report); *Bell v. Fisher*, 2010 WL 3447694, at *6 (Del. Super. Aug. 30, 2010) ("[T]his Court's necessary reliance on dates and deadlines in a trial scheduling order would be undermined if experts could submit affidavits with new, expanded or amended opinions as part of the motion . . . briefing process, thereby potentially requiring vacation of the existing trial scheduling order . . . and allow subsequent discovery far past the deadline for [the] same.").

[14] *Coleman*, 902 A.2d at 1107 (citing 3 James Moore et al., *Moore's Federal Practice* § 16.14[1][b] (3d ed. 2004)).

6

additional or supplemental expert submissions by Moses.[15]  As a corollary, we do

not have on appeal a reviewable record upon which we can determine whether

Moses has demonstrated good cause for submitting Dr. Ogden's supplemental

opinions after the deadline had passed.  Accordingly, on this record we will not

find that the trial court abused its discretion for not considering Dr. Ogden's

supplemental reports after the stipulated expert disclosure and report deadline had

expired.[16]

Thus, the question that remains is whether Dr. Ogden's use of the term

"feasible" in his January 15 report was sufficient to constitute a "reasonable

medical probability" or "reasonable medical certainty."  In *O'Riley*, we stated that

"[a] doctor cannot base his expert medical opinion on speculation and

conjecture."[17]  Our case law is clear that "when an expert offers a medical opinion

it should be stated in terms of 'a reasonable medical probability' or 'a reasonable

medical certainty.'"[18]  Moses urges us to consider our decision in *Gen. Motors*

*Corp. v. Freeman* where we acknowledged that a doctor's statements should be

---

[15] Even so, the trial court concluded that "no good cause exists for the April 25 and May 14 supplemental reports."  *Moses II*, 2014 WL 4249784, at *4.

[16] As noted above, in its Order denying reargument, the Superior Court clarified that it was not considering the April 25, 2014, report from Dr. Ogden due to its untimeliness.

[17] *O'Riley*, 69 A.3d at 1011.

[18] *Id.* (quoting *Floray v. State*, 720 A.2d 1132, 1136 (Del. 1998) (footnote omitted) (citations omitted)).

7

considered in the light of all of the evidence.[19] In answering this question, our recent decision in *Mammarella v. Evantash*[20] is illustrative.

In *Mammarella*, we reiterated the legal standard for an expert opinion,[21] and held that a doctor's trial deposition testimony was insufficient to establish causation, as was required to establish Mammarella's malpractice claim. Mammarella was diagnosed with Stage I, Grade III breast cancer consisting of a tumor eleven millimeters in diameter. Her medical negligence action involved, among other claims, a claim that Mammarella's doctors should have diagnosed the nodule discovered in her breast as cancer earlier, and recommended radiation instead of the more disabling chemotherapy treatments she ultimately underwent. To establish her claim, Mammarella needed to offer sufficient evidence for a jury to find a causal link between a six-month delay in her diagnosis and the fact that she had to undergo chemotherapy. Mammarella contended that one of her doctors, Dr. Biggs, told her that she would be eligible for radiation treatment if the tumor

---

[19] *Gen. Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960) ("It is a matter of general knowledge among those of us who are at all familiar with the testimony of physicians that at times one doctor will use words denoting 'possibility' while another may use words denoting 'probability' when actually they mean the same thing. We think that such testimony should be considered in the light of all the evidence, particularly where the injury occurred directly and uninterruptedly after the trauma.").

[20] 93 A.3d 629 (Del. 2014).

[21] *Id.* at 635 (noting that "when an expert offers a medical opinion it should be stated in terms of 'a reasonable medical probability' or 'a reasonable medical certainty' and [a] doctor cannot base his expert medical opinion on speculation or conjecture." (alternation in original) (quoting *O'Riley*, 69 A.3d at 1011). This Court further noted that "[a] doctor's opinion about what is possible is no more valid than the jury's own speculation as to what is or is not possible." *Id.* (quoting *Oxendine v. State*, 528 A.2d 870, 873 (Del. 1987) (internal quotations omitted)).

had been eight millimeters or less in size. Dr. Biggs was the only expert Mammarella designated to testify regarding causation. Dr. Biggs testified that he could not say that if a biopsy had been performed on the nodule six months earlier that it would have revealed Mammarella's breast cancer, because "[t]hat would be pure speculation."[22] Further, Dr. Biggs explained that eight millimeters was not a "bright line" cut-off measurement for determining whether chemotherapy is required or appropriate.[23] The trial court held that Dr. Biggs testimony did not provide a sufficient evidentiary basis for the jury to find that Mammarella's treatment options changed as a result of the alleged medical negligence; and we affirmed the judgment of the Superior Court.[24]

The *Mammarella* Court also considered an argument -- one that the Court ultimately determined was waived on appeal -- that, nevertheless, provides some guidance on the legal standard for expert opinions. At oral argument on appeal, Mammarella's counsel presented a recast version of certain language from Dr. Biggs' testimony. Dr. Biggs had stated, "I think looking back at our initial consultation note, I indicated that if the tumor was no larger than it appeared on ultrasound, which I think was, what, 8 millimeters, that I *would likely feel* that she

---

[22] *Mammarella*, 93 A.3d at 632.

[23] *Id.* at 633.

[24] *Id.* at 636.

9

would not take chemotherapy."[25]  Relying on *Hugg v. Torres*,[26] Mammarella suggested that the word "likely" could be replaced with the word "probably." Mammarella argued that Dr. Biggs' statement was legally sufficient to show causation.  The Court examined the expert's testimony to determine whether it could conclude to a reasonable medical probability or certainty that the doctor would have recommended radiation instead of chemotherapy had the tumor been diagnosed earlier.  Given that the doctor's testimony did not provide sufficient evidence that the doctor's statement was one of a reasonable medical probability, the Court stated that even the recast testimony was not sufficient to establish the causation element of Mammarella's claim.

We find the same is true in this case.  While our decisions in *O'Riley* and *Mammarella* strongly encourage medical experts to state their conclusions to a "reasonable medical probability" or "reasonable medical certainty," we allow trial courts to exercise some discretion to determine whether the opinion offered by an expert, when considered in light of all of the evidence, meets that legal standard. In this case, the trial court, in its order denying reargument, stated that "[w]hile Dr. Ogden did not necessarily have to state 'reasonable medical probability' in his January 15 report, he did have to provide something in the report to show that his

---

[25] *Id.* (emphasis added).

[26] 1993 WL 189492 (Del. Super. May 21, 1993), *rev'd on other grounds*, 637 A.2d 827 (Del. 1993).

10

opinion was based upon a reasonable medical probability."[27]  Here, Moses

provided no other affidavit, deposition or other evidence that the trial court could

use to determine whether Dr. Ogden's use of the word "feasible" constituted a

reasonable medical probability or certainty.

Finally, and for many of the same reasons set forth above, we find no merit

in Moses' second claim that the Superior Court abused its discretion when it

refused to grant Moses' motion for reargument.

### III.   CONCLUSION

Based upon the forgoing, the judgment of the Superior Court is hereby

AFFIRMED.

---

[27] *Moses II*, 2014 WL 4249784, at *4.