**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

COUNTRY LIFE HOMES, LLC,                     )
HEARTHSTONE MANOR I, LLC,                     )
HEARTHSTONE MANOR II, LLC,                    )
RIVER ROCK, LLC, KEY                          )
PROPERTIES GROUP, LLC, CEDAR                  )
CREEK LANDING CAMPGROUND,                     )
LLC, MBT LAND HOLDINGS, LLC,                  )
ELMER FANNIN, and MARY ANN                    )
FANNIN,                                       )          C.A. NO. N19C-03-228 VLM
                                             )
      Plaintiffs,                          )
                                             )
      v.                                   )
                                             )
GELLERT SCALI BUSENKELL &                     )
BROWN, LLC,                                   )
                                             )
      Defendant.                           )

**MEMORANDUM OPINION**
Submitted: August 23, 2024
Decided: November 19, 2024

*Upon Consideration of Plaintiffs' Motion to Deem Identification of its Bridging Expert and the Expert Report as Timely Filed,*
**DENIED**.
*Upon Consideration of Defendant's Motion for Summary Judgment,*
**GRANTED**.

Michael R. Ippoliti, Esquire, and Christopher Isaac, Esquire of IPPOLITI LAW GROUP, Wilmington, Delaware, Attorney for Plaintiffs.

Aaron Moore, Esquire, and M. Claire McCudden, Esquire of MARSHALL DENNEHEY, P.C., Wilmington, Delaware, Attorney for Defendant.

**Medinilla, J.**

## I. INTRODUCTION

This is a legal malpractice action that began as a request for unpaid legal fees.[1] Gellert Scali Busenkell & Brown ("GSB&B") was retained to defend Country Life Homes, LLC and related entities (collectively, "Country Life") with respect to eight civil actions brought against it for Country Life's alleged nonpayment and default of various commercial loans with Fulton Bank, N.A. Country Life terminated its relationship with GSB&B, retained another firm, and the litigation with Fulton Bank resolved through mediation three months later. GSB&B initially filed suit seeking payment of unpaid legal fees. Country Life responded with counterclaims for legal malpractice.

GSB&B moves for summary judgment under Superior Court Civil Rule 56 arguing Country Life cannot establish a breach of the standard of care without qualified expert testimony, and alternatively, that it cannot prove damages on this record. In response, Country Life filed a Motion to "Deem Identification of Bridging Expert and the Expert Report as Timely Filed." For the reasons stated below, Country Life's Motion is **DENIED**, and GSB&B's Motion for Summary Judgment is **GRANTED**.

---

[1] On November 6, 2023, this Court granted the parties' jointly filed Motion to Amend Caption to identify the Country Life entities as Plaintiffs and GSB&B as the Defendant. D.I. 95.

## RELEVANT FACTS AND PROCEDURAL HISTORY[2]

### A. THE UNDERLYING FULTON BANK LITIGATION

On March 1, 2016, Country Life Homes retained GSB&B to assist in restructuring various commercial loans with Fulton Bank, N.A ("Fulton Bank").[3] The restructuring efforts were unsuccessful. In 2016 and 2017, Fulton Bank commenced eight civil actions against Country Life, seeking approximately $6.6 million for allegedly unpaid loans in default.[4] Michael Busenkell, Esquire and Charles J. Brown III, Esquire of GSB&B (Attorneys Busenkell and Brown) represented Country Life in these actions.[5]

During the representation, GSB&B retained the accounting firm of Gavin/Solmonese, LLC ("G/S") to review disputed loan documents and analyze contested amounts.[6] G/S was retained specifically to review two disputed loans: a Country Life Homes Loan and a Key Properties Group Loan.[7] G/S's consultant, Ross Waetzman, conducted an analysis based on information provided by Fulton

---

[2] Unless otherwise noted, this Court's recitation is drawn from GSB&B's original Complaint (hereafter "Compl.") and all documents the parties incorporated by reference. D.I. 1.

[3] Compl. ¶ 11.

[4] Country Life's Answer with Affirmative Defenses and Counterclaim ¶ 70, D.I. 13 (hereafter "Countercl.").

[5] *Id.* ¶ 25.

[6] *Id.* ¶ 81.

[7] Defendant's Opening Brief in Support of its Motion for Summary Judgment at 6-7, D.I. 123. at 6-7 (hereafter "Def.'s Opening Br."); *see also* Affidavit of Ross Waetzman of Gavin/Solmonese at 2-3, D.I. 123, Ex. B (hereafter "Waetzman Aff.").

Bank and Country Life.[8] In August 2017, G/S concluded that Country Life had overpaid Fulton Bank by approximately $3.086 million.[9] The G/S report cost Country Life over $330,000.[10]

In October 2016, Fulton Bank extended a settlement offer that would have provided a $500,000 discount on the claimed loan balances.[11] Country Life declined this offer.[12] Instead, in December 2017, acting on behalf of Country Life, GSB&B filed two actions against Fulton Bank ("the Fulton Matter")[13] asserting the bank had overstated the amounts owed. In September 2018, Country Life terminated GSB&B's services and retained successor counsel.[14] Three months later, Country Life settled the Fulton Matter by paying the full principal and interest balances due under the loans, plus Fulton Bank's attorneys' fees and post-settlement interest, totaling approximately $6.73 million.[15]

---

[8] Def.'s Opening Br. at 6-7; *see also* Waetzman Aff. at 2-3.

[9] *Id.*

[10] Answering Brief in Opposition to Defendant's Motion for Summary Judgment at 5, D.I. 127 (hereafter "Pls.' Answering Br.").

[11] D.I. 117; *see also* Transcript of Deposition of Michael Fannin at 52, D.I. 117, Ex. B (hereafter "Fannin Dep.").

[12] Compl. ¶ 22.

[13] Countercl. ¶ 70. ¶¶ 72, 78 (referring to C.A. No. N17C-12-138 PRW and C.A. No. N17C-02-062 PRW)). The claims against Fulton asserted claims for breach of contract and breach of the covenant of good faith and fair dealing based on information that Defendants had overpaid Fulton on some of their accounts, as reported by G/S. *See id.* at page 3 (citing Defendants' Counterclaim at ¶¶ 73, 79 (referring to C.A. No. N17C-12-138 PRW and C.A. No. N17C-02-062 PRW)).

[14] Compl. ¶ 15.

[15] Countercl. ¶ 107.

## B. THE PRESENT LITIGATION

This litigation commenced on March 22, 2019, when GSB&B filed a complaint seeking payment of unpaid legal fees.[16] Country Life responded with an Answer and Counterclaim, raising four affirmative defenses and asserting counterclaims for legal malpractice and *respondeat superior*.[17]

In September 2019, GSB&B filed a Motion to Dismiss the Counterclaims.[18] Following briefing and oral argument, in December 2019, this Court granted GSB&B's Motion to Dismiss Country Life's legal malpractice claims.[19] The parties thereafter settled GSB&B's claim for unpaid legal fees.[20] Country Life appealed the dismissal of their legal malpractice claims to the Supreme Court, which reversed and remanded the matter back to this Court in September 2021.[21]

The procedural history following remand reflects a series of extensions and delays in expert disclosure compliance. The original Trial Scheduling Order ("TSO") of February 7, 2022, established Country Life's expert report deadline as

---

[16] Compl. ¶ 30.

[17] The affirmative defenses are: (1) payment; (2) accord and satisfaction; (3) unclean hands; and (4) a dispute of the accuracy of the amount of principal, interest, and fees claimed by GSB&B Countercl. ¶¶ 34-37; *id.* ¶¶ 109-117.

[18] D.I. 22.

[19] D.I. 33.

[20] D.I. 54.

[21] *Country Life Homes, LLC v. Gellert Scali Busenkell & Brown, LLC*, 259 A.3d 55 (Del. 2021).

July 29, 2022.[22] This deadline underwent multiple modifications: first to December 30, 2022,[23] then to February 28, 2023,[24] and finally to January 12, 2024.[25]

When Country Life failed to meet this January deadline, GSB&B filed a Motion to Compel Expert Report.[26] The Court granted this motion, ordering production by March 21, 2024.[27] Country Life designated its accountant, Louis Friedman, who is also a Maryland-licensed attorney, as their expert witness.[28] His report was served on March 26, 2024, five days after the court-imposed deadline.[29]

On May 31, 2024, GSB&B filed its Motion for Summary Judgment, challenging, among other grounds, Mr. Friedman's qualification as a Maryland attorney to serve as an expert in Delaware legal malpractice litigation.[30] In response, Country Life identified Steven Holfeld as their bridging expert on June 18, 2024,[31]

---

[22] D.I. 69.

[23] D.I. 73.

[24] D.I. 81.

[25] D.I. 88.

[26] D.I. 100.

[27] D.I. 101.

[28] Def.'s Opening Br. at 20.

[29] *Id.*, Ex. E; D.I. 141.

[30] *See* Defendant's Motion for Summary Judgment, D.I. 117 (hereafter "Mot.").

[31] Defendant's Reply Brief in Support of its Motion for Summary Judgment at 7-8, D.I. 140 (hereafter "Def.'s Reply Br.").

and submitted his report on June 26, 2024—more than six months after the expert disclosure deadline.[32]

On July 29, 2024, Country Life also filed a "Motion to Deem Identification of its Bridging Expert and the Expert Report as Timely Filed," seeking this Court declare its bridging expert timely filed.[33] GSB&B opposed.[34] Because Country Life's lead counsel was not present during oral arguments to establish good cause for the delays, the Country Life was provided an opportunity to supplement the record, with the same courtesy to GSB&B to respond.[35] With trial is to begin on January 6, 2025,[36] and no further submissions, the Motion for Summary Judgment is now fully briefed and ripe for decision.

## II.    PARTY CONTENTIONS

### A. GSB&B'S CONTENTIONS

GSB&B advances several arguments in support of its Motion for Summary Judgment. First, it argues that Country Life cannot demonstrate any breach of the standard of care.[37] Specifically, GSB&B maintains that the conclusion regarding

---

[32] *Id.* at 4, n.2.

[33] D.I. 139.

[34] D.I. 141.

[35] *See* D.I. 145, 146.

[36] *See* D.I. 88.

[37] Def.'s Opening Br. at 16.

Fulton Bank's alleged overstatement of debt was drawn by G/S based on information provided by Fulton Bank and Country Life, not by GSB&B's attorneys.[38]

Second, GSB&B argues that Country Life cannot prove damages.[39] It maintains that the only settlement opportunity available during its representation was Fulton Bank's offer of a $500,000 discount, which was rejected by Country Life because it did not believe the claimed amounts were accurate.[40] GSB&B argues, therefore, it properly performed its professional obligations by conveying the settlement offer and implementing Country Life's chosen litigation strategy.[41] Since there is no evidence that any other settlement opportunity was available, Country Life's claim of settlement-related damages are purely conjectural.[42]

Third, GSB&B asserts Country Life cannot maintain its legal malpractice action without qualified expert testimony.[43] Namely that Country Life's designated choice is not qualified to serve as an expert because he is not licensed to practice law in Delaware and has no experience in banking litigation.[44] GSB&B further contends

---

[38] *Id.* at 17.

[39] *Id.* at 19.

[40] *Id.* at 16-17.

[41] *Id.* at 18-19.

[42] *Id.* at 19.

[43] Def.'s Opening Br. at 20-24; Def.'s Reply Br. at 7-11.

[44] *Id.*

that without good cause shown, Country Life's untimely "bridging expert report" from Steven Holfeld should be stricken because it was submitted more than six months after the expert disclosure deadline.[45] Without admissible expert testimony, GSB&B maintains Country Life cannot meet its burden to establish the applicable standard of care.[46]

## B. COUNTRY LIFE'S CONTENTIONS

Country Life's claims center on allegations that GSB&B failed to accurately advise them, encouraged unnecessary litigation against Fulton Bank, ignored the potential liability for Fulton Bank's legal expenses, and commissioned a deeply flawed and costly G/S report.[47] Specifically, it argues GSB&B failed to conduct an adequate initial investigation and analysis of the amounts due under the loans.[48] Country Life also contends GSB&B committed procedural legal errors that increased litigation costs, by failing to demand a jury trial;[49] not filing a compulsory counterclaim;[50] and failing to file an affidavit to request a continuance in order to respond to Fulton Bank's Motion for Summary Judgment.[51] It further alleges

---

[45] *Id.*

[46] Def.'s Opening Br. at 24; Def.'s Reply Br. at 11.

[47] Pls.' Answering Br. at 4-8.

[48] *Id.* at 12.

[49] Countercl. at ¶ 93.

[50] *Id.* at ¶¶ 94, 95.

[51] *Id.* at ¶¶ 98-100.

GSB&B failed to properly advise them regarding settlement opportunities and litigation risks,[52] and that GSB&B should have more strongly urged acceptance of Fulton Bank's settlement offer.[53]

Lastly, Country Life contends that Mr. Friedman is qualified to serve as an expert witness because of his unique familiarity with the case, having served as Country Life's accountant and financial advisor since 2001 and having been actively involved in the underlying loan disputes.[54] It further argues that since its bridging expert confirmed the standard of care for attorneys in Maryland and Delaware is identical, Mr. Friedman's expert designation should be deemed timely filed, and he should be permitted to testify.[55] Alternatively, it argues the Court is permitted to find that alleged errors—such as the failure to file compulsory counterclaims and request a continuance—to be so obvious that expert testimony is not required to establish them as deviations from the standard of care.[56]

## III. STANDARD OF REVIEW

The burden of proof on a motion for summary judgment under Superior Court Civil Rule 56 falls on the moving party to demonstrate that "there is no genuine issue

---

[52] Pls.' Answering Br. at 10-12.

[53] *Id.*

[54] *Id.* at 12-16.

[55] *See* D.I. 139.

[56] Pl.'s Answering Br. at 15-16.

10

as to any material fact and that the moving party is entitled to judgment as a matter of law."[57]  If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[58]  Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[59]  "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[60]

## IV.  DISCUSSION

To sustain a legal malpractice claim in Delaware, a plaintiff must establish: (1) the employment of the attorney; (2) the attorney's neglect of a professional obligation; and (3) resulting loss.[61]  Country Life's claims fail as to the second and third elements.

---

[57] Super. Ct. Civ. R. 56(c).

[58] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3–4 (Del. 1995); *see also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[59] *Ebersole v. Lowengrub*, 180 A.2d 467, 469–70 (Del. 1962). *See also CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. June 8, 2015).

[60] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[61] *Sherman v. Ellis*, 246 A. 3d 1126, 1131 (Del. 2021).

## A. PLAINTIFFS FAIL TO ESTABLISH BREACH OF STANDARD OF CARE

Each party bears the burden of proof on the admissibility of their expert opinion testimony.[62] Delaware Rule of Evidence 702 addresses the admissibility of expert testimony. In a legal malpractice action, Delaware law requires expert testimony to establish both the standard of care and its breach, unless the attorney's alleged mistakes are "so obvious that such testimony is not required."[63] Moreover, an expert in a Delaware legal malpractice case must be licensed to practice law in Delaware, though out-of-state attorneys may testify with appropriate bridging testimony establishing the equivalence of standards between jurisdictions.[64]

In support of its assertions, Country Life makes an untimely proffer of its accountant, Louis Friedman, as its expert witness. The procedural history notes the untimeliness of this submission. The original TSO of February 7, 2022, was modified multiple times, with the final deadline set for January 12, 2024.[65] Country Life not only missed this extended deadline but also failed to comply with the

---

[62] *Minner v. Amer. Mort. & Guar. Co.*, 791 A.2d 826, 843 (Del. Super. 2000).

[63] *See Brett v. Berkowitz*, 706 A.2d 509, 517 (Del. 1998); *Korotki v. Hiller & Arban, LLC*, 2017 WL 2303522 at *17 (Del. Super. May 23, 2017).

[64] *Phillips v. Wilks, Lukoff & Bracegirdle, LLC*, 2014 WL 4930693, at *2 (Del. Oct. 1, 2014).

[65] *See* D.I. 69.

Court's Order compelling a timely production of the expert report.[66] Instead, Country Life served Mr. Friedman's report after the deadline.[67]

Setting the time issues aside, Mr. Friedman is not licensed to practice law in Delaware.[68] To cure this deficiency, Country Life filed a Motion to "Deem Identification of its Bridging Expert and the Expert Report as Timely Filed," and attempts to have this Court "deem timely" the bridging expert filed more than six months after the expert disclosure deadline.[69] This request deviates from standard practice under applicable Rules of this Court.[70] Also, it was filed only in response to GSB&B's Motion for Summary Judgment.[71] Our Supreme Court has specifically addressed the submission of late expert reports in the summary judgment context.

In *Jackson v. Hopkins Trucking Co., Inc.*, the Supreme Court affirmed this Court's exclusion of an expert report submitted after both the discovery deadline had passed and summary judgment motion was filed.[72] The Supreme Court emphasized that "the Report was late pursuant to the original scheduling order and late even

---

[66] D.I. 101.

[67] D.I. 106.

[68] Def.'s Opening Br., Ex. E.

[69] D.I. 139.

[70] The Plaintiff has cited to no Superior Court Rule procedurally supporting such motion.

[71] D.I. 139.

[72] *Jackson v. Hopkins Trucking Co., Inc.*, 3 A.3d 1097, 1097 (Del. 2010).

under the parties' agreed-upon extension,"[73] and "[considered that] the Report would prejudice the Defendants because they were not able to respond to it."[74] Noting further, the "[p]arties must be mindful that scheduling orders are not merely guidelines but have full force and effect as any other order of the [Superior] Court."[75]

These circumstances warrant similar consideration. Trial is to begin on January 6, 2025.[76] The TSO expressly states, "all of the deadlines established by this Amended Trial Order are firm deadlines" and that "failure to meet these deadlines, absent good cause shown," may result in the Court refusing extensions regardless of the consequences.[77]

Country Life has not demonstrated "good cause."[78] This case was remanded in 2021 with the Amended TSO finalized in May 2023. The need for a Delaware-licensed expert or appropriate bridging testimony was foreseeable from the outset of this litigation, as these requirements are well-established under Delaware law.

---

[73] *Id.*

[74] *Id.*

[75] *Id.* (citing *Barrow v. Abramowicz*, 931 A.2d 424, 430 (Del. 2007)).

[76] D.I. 88.

[77] *Id.* ¶11.

[78] "Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006). *See also Moses v. Drake*, 109 A.3d 562, 566 (Del. 2015). Plaintiffs fail to demonstrate they have exercised reasonable diligence in their supplemented Letter Regarding "Good Cause." *See* D.I. 145.

Country Life's reasoning that eight attorneys in Delaware declined to participate as its expert[79] does not establish good cause.

Additionally, the prejudice to Defendant is substantial and multifaceted. With discovery now closed, GSB&B cannot depose Mr. Holfeld or obtain rebuttal expert testimony. Moreover, Mr. Holfeld's report, comprising only a few substantive sentences, fails to provide the detailed bridging analysis necessary to establish that the standard of care for attorneys is similar in Maryland as in Delaware.

Even forgiving the untimeliness of the expert report of the proposed bridging expert, Country Life's accountant fails to meet the requirements for the admissibility of expert testimony under Delaware Rule of Evidence 702.[80]

Mr. Friedman's *curriculum vitae* reveals expertise primarily in "Accounting, Individual Taxes, Estate Planning, Corporate Business Taxation, Taxation of Real

---

[79] *See* D.I. 145. ". . . . Plaintiffs' counsel attempted to engage at least eight (8) different Delaware attorneys in the capacity as expert witness. None of those attorneys agreed to testify, generally because they had relationships with agents of [GSB&B] in this matter were conflicted out due to scheduling, or did not feel that they would . . . . Plaintiff attempted to engage another three (3) attorneys as bridging expert – all three declined."

[80] D.R.E. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Estate and Business Transactions," with no indicated experience in commercial banking litigation or legal malpractice matters.[81]  Yet, one of Country Life's claims center on allegations that GSB&B failed to accurately advise them and encouraged unnecessary litigation against Fulton Bank.[82]  It criticizes litigation strategies such as the failure to file compulsory counterclaims under Rule 13(a) in one case or to request a Rule 56(f) continuance in another.[83]

Mr. Friedman advised Country Life in the underlying Fulton Bank Matter and is Country Life's accountant, offering tax services as its CPA since 2001.[84]  Although barred in Maryland, he practices mainly as an accountant with no litigation experience, and admitted as much in his deposition.[85]  Even if the Court were to accept Country Life's position that its expert should be well-versed in banking and commercial loans, Mr. Friedman is a fact witness with extensive involvement as an accountant in its dispute with Fulton Bank.  When Country Life's former President and corporate representative testified about who was involved in its decision to continue litigation against Fulton Bank and file its counterclaim, he stated:[86]

---

[81] Def.'s Opening Br., Ex. E.

[82] Countercl. ¶ 114; Pls.' Answering Br. at 4-8.

[83] Pls.' Answering Br. at 7.

[84] *See* Mot. at 20-21; *see also* Friedman Dep.

[85] Friedman Dep. at 234.

[86] *See* Fannin Dep. at 52.

A: "Me, Elmer, Lou [Friedman], Mike, maybe Charlie. . . . [W]e had settlement sheets that we show paying the [Fulton] Bank based on the little bit they did provide us that Lou [Friedman] analyzed with us . . . . [T]hat there was evidence of overpayment . . . . We want a Counterclaim that not only you say we owe you money; we think you owe us money."[87]

Q: Let's go back to the decision [to file a counterclaim against Fulton]. . . . I understand [Attorneys Busenkell and Brown] may have recommended or did recommend a Counterclaim. . . . Is it your position that the information that [Attorneys Busenkell and Brown] relied upon for asserting that Counterclaim came from whom?

A: I'd say Lou Friedman. [88]

Mr. Friedman's accounting experience fails to satisfy the standards under Rule 702 as a litigation expert in a legal malpractice case. And his critical role as a fact witness also precludes him from also testifying as an expert.

Lastly, the Court rejects Country Life's alternative contention that expert testimony is unnecessary here. Contrary to Country Life's position, the alleged errors here—decisions regarding loan analyses, settlement evaluation, and litigation strategy in multiple commercial banking matters—involves complex issues, including identifying the appropriate standard of care, and an assessment of whether the facts presented give rise to a breach of that standard. These are not issues for the jury to resolve without appropriate expert testimony. Accordingly, Plaintiffs' Motion

---

[87] *Id.* at 30 - 33.

[88] *Id.* at 36-39.

to Deem Identifiation of Their Bridging Expert and Expert Report as Timely Filed is **DENIED**. The lack of an expert witness is fatal to the claim of legal malpractice.

## B. PLAINTIFFS FAIL TO ESTABLISH CAUSATION AND DAMAGES

Even if Country Life could establish through an appropriate expert a breach of the standard of care, the record fails to show that a genuine of material fact exists as to causation and damages. Country Life's theory of liability fundamentally mischaracterizes the nature of GSB&B's representation. It alleges that GSB&B failed to properly advise settlement, yet it was Country Life, not GSB&B, that made the strategic decision to proceed with litigation.[89]

> Q: What settlement opportunities did the Country Life entities have with Fulton Bank prior to the settlement that was facilitated after [successor counsel] got involved?
>
> A: I'm aware of one offer in the very beginning offering just a flat, I think, $500,000 settlement.
>
> Q: Okay. Was that offer accepted?
>
> A: No.
>
> Q: Why not?
>
> A: We didn't know how much we owed.
>
> Q: So if I understand you correctly, the Country Life entities were not prepared to accept that proposal because you were not confident that Fulton Bank was representing accurately how much was owed by the Country Life entities.

---

[89] D.I. 117; *see also* Fannin Dep. at 52.

A: Correct, correct, 100%.[90]

GSB&B pursued the litigation strategy at Country Life's request. The record is void of evidence to suggest that the tail was wagging the head. Or similarly that GSB&B negligently advised that Fulton Bank's claims were overstated.[91] Moreover, Country Life's damages theory, premised on hypothetical better settlement terms that might have been available remains purely speculative.[92] The law requires more than speculation to sustain a claim for legal malpractice.[93]

Viewing the evidence in the light most favorable to Country Life, its claims cannot survive summary judgment. This result would not change even if the Court were to find good cause to accept Mr. Holfeld's untimely bridging expert testimony. No genuine issues of material fact exist as to the professional neglect and resultant loss requirements to establish legal malpractice. Thus, Country Life cannot prevail on its claims as a matter of law.

---

[90] Fannin Dep. at 50-53.

[91] Waetzman Aff. at 2-3. Waetzman, the insolvency and restructuring advisor with G/S, analyzed Country Life's loans and attested that his findings were based upon information provided to him by Fulton Bank and the Country Life entities. He avers that Attorneys Busenkell and Brown did not advise the Country Life that the debts Fulton Bank claimed were overstated.

[92] The record contains no evidence of any other settlement opportunities during GSB&B's representation, and Country Life's suggestion that better settlement terms might have been available lacks evidentiary support.

[93] *Balinski v. Baker*, 2013 WL 4521199, at *3 (Del. Super. Aug. 22, 2013).

## V.    CONCLUSION

For the foregoing reasons, Country Life's Motion to Deem its Identification of its Bridging Expert and the Expert Report as Timely Filed is **DENIED**, and GSB&B's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge
